# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1582

_____

| | | |
|---|---|---|
| Gary A. Bloom, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an |
| | * | Order of the National |
| National Labor Relations Board, | * | Labor Relations Board. |
| | * | |
| Respondent, | * | |
| | * | |
| Office and Professional Employees | * | |
| International Union, AFL-CIO Local 12, | * | |
| | * | |
| Intervenor on Appeal. | * | |

_____

Submitted:  October 22, 1999

Filed:  April 4, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, and HANSEN, Circuit Judges.

_____

WOLLMAN, Chief Judge.

This matter returns to us on remand from the Supreme Court.  We affirm the decision and order of the National Labor Relations Board (Board) and deny the petition for review.

# I.

Petitioner, Gary Bloom, the Office and Professional Employees International Union, Local 12 (Local 12), and the Board come before us for the third time. For a background of the case, we refer to our opinions issued during the earlier stages of this litigation:  Bloom v. NLRB, 30 F.3d 1001 (8th Cir. 1994) (Bloom I), and Bloom v. NLRB, 153 F.3d 844 (8th Cir. 1998) (Bloom II), vacated, 525 U.S. 1133 (1999).

Local 12 represents the bargaining unit of clerical employees at Group Health, Inc., where Bloom worked as such an employee. The collective bargaining agreement between Local 12 and Group Health contained a union security clause that required all employees to become "members" of the union in good standing within thirty-one days of their hiring. The membership language comes from section 8(a)(3) of the National Labor Relations Act (Act), which allows an employer in agreement with a union "to require as a condition of employment membership" in the union. See 29 U.S.C. § 158(a)(3) (1998). The statute further provides, however, that such an employer shall not discriminate against an employee for nonmembership if the employer "has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required" as a condition of membership.[1]  See id.

Bloom brought to the Board's attention certain practices of Group Health and Local 12 and, after an investigation, the Board's General Counsel issued a complaint against them for unfair labor practices. All parties waived a hearing before an

---

[1]A member for statutory purposes may be what is termed a "nonmember employee," who can be required to pay only the "agency fee," comprised of that percentage of fees and dues expended for a union's activities as the workers' exclusive collective bargaining representative in dealings with the employer.  See Communications Workers v. Beck, 487 U.S. 735, 762-63 (1988).

administrative law judge and proceedings were transferred to the Board upon stipulated facts, which essentially are as follows:  A few months after Bloom had begun to work for Group Health, Group Health began to deduct fees for full union membership from his paycheck and remit them to Local 12.  When Bloom, who did not wish to join the union, failed to return a form to authorize these paycheck deductions and requested an breakdown of dues and fees used in calculating the agency fee from Local 12, the union sent him a letter threatening to seek his discharge if he did not become a member. While this matter was pending before the Board,  Local 12 and Group Health reached an informal settlement, which the Board's General Counsel recommended for approval as remedying the complaint's allegations. The Board then issued an unpublished order approving the settlement and dismissing the complaint.  Bloom, unsatisfied, petitioned us for review.

We denied enforcement of the Board's order because the union security clause that had been unlawfully interpreted and applied to mislead employees remained in the bargaining agreement.  See Bloom I, 30 F.3d at 1004.  We concluded that the settlement's requirement that Local 12 and Group Health post a temporary notice stating that the clause would no longer be enforced as written did not alone sufficiently effectuate the purposes of the Act and policies of the Board.  See id. at 1005.  Because the clause had been literally enforced and the settlement provision for notice provided no measures to effectively inform employees of their minimum union obligations under Communications Workers v. Beck, 487 U.S. 735 (1988), we found that the policies and purposes of the Act were not being fulfilled.  See Bloom I, 30 F.3d at 1004-05. We noted that one of the policies of the Act is to preserve voluntary unionism.  See id. at 1003; Pattern Makers' League v. NLRB, 473 U.S. 95, 104 (1985).  We concluded that Local 12's attempt to pressure Bloom into joining the union by threatening to bring about his discharge constituted a violation of this policy, a violation that was not adequately addressed by the settlement. We therefore held that the Board was required to impose a more stringent settlement condition--that the clause be expunged, see id. at 1005--and we remanded the case to the Board for the entry of that relief.

The matter reached us again when Bloom petitioned for review of a third[2] settlement and corresponding Board decision and order. This third settlement provided for a new union security clause and for notice procedures that included: (1) the posting of a notice by Local 12 to all employees that fees and dues would not be deducted from an employee's paycheck without the employee's written authorization, and (2) for individual notice by Local 12 to certain classes of employees--current nonmembers and new hires within the statutory limitations period--about their right to refrain from union activities. The security clause now reads:

> All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in the Union, and all such Employees subsequently hired shall become members of the Union within thirty-one (31) calendar days, within the requirements of the National Labor Relations Act. Union membership is required only to the extent that Employees must pay either (i) the Union's initiation fees and periodic dues or (ii) service fees which in the case of a regular service fee payer shall be equal to the Union's initiation fees and periodic dues and in the case of an objecting service fee payer shall be the proportion of the initiation fees and dues corresponding to the proportion of the Union's total expenditures that support representational activities.

The posted notice will provide that Local 12 will not accept deductions of dues and fees without prior written authorization, that Bloom personally has been reimbursed those fees wrongfully deducted, and that Local 12 will not enforce the security clause by requiring employees to sign a membership application or checkoff authorization form. In this area, Group Health's duties mirror those of Local 12; thus Group Health and Local 12 act as checks on each other. Additionally, Local 12 will provide the

---

[2]Bloom had petitioned for review of a second Board order approving a second settlement. While retaining jurisdiction over his petition, we granted a motion to remand to the Board for amendment of that second settlement, making the order now at issue the one that approved the third version of the settlement.

qualifying classes of employees with individual notice that contains detailed information regarding Beck's minimum requirements, ensuring that at least some workers will know that they have a right to be objecting nonmembers who will be charged for only the percentage of dues and fees that are spent for the union's representational activities.  This notice will also explain that those workers who become objecting nonmembers within thirty days of receipt of the notice will receive a refund.

Concluding that the Board, Local 12, and Group Health had not done enough to alleviate our concerns about Local 12's attempt to extract full union membership from employees such as Bloom, we again denied enforcement.  We found that even though it tracked the language of section 8(a)(3), the rewritten security clause still failed to effectuate the Act's purposes and policies, as well as our mandate in Bloom I, by continuing to rely on language that was misleading, coercive, and repugnant to an employee's right under Beck to pay only the agency fee.  See Bloom II, 153 F.3d at 850.

Having found the rewritten security clause wanting, we then ordered that the clause be deleted in its entirety and that it be replaced by a provision of our own making, which spelled out in some considerable detail what we concluded the Act, as interpreted in Beck and Pattern Makers', requires.  See Bloom II, 153 F.3d at 851. Local 12 thereupon filed a petition for writ of certiorari.

In Marquez v. Screen Actors Guild, Inc., the Supreme Court held that the negotiation of a clause that tracks the language of the Act is neither arbitrary nor in bad faith, concluding that the Court's limiting gloss from NLRB v. General Motors Corp., 373 U.S. 743 (1963), and Beck is incorporated into that statutory language.  See 525 U.S. 33, 45-48 (1998).  Thus, a union does not violate the duty of fair representation solely by using language in a security clause that is guided by the Act's section 8(a)(3),

such as the term "membership," even though employees may not understand what these terms of art mean without further explanation.  See id. at 46.

Thereafter, the Court granted Local 12's petition for writ of certiorari and vacated and remanded Bloom II for further consideration in light of Marquez, 525 U.S. 1133, 119 S. Ct. 1023 (1999).

**II.**

Marquez holds that the language of a union security clause may mirror the statutory terms of art.  See Marquez, 525 U.S. at 46.  A clause that tracks section 8(a)(3)'s language can be enforced as written "because by tracking the statutory language, the clause incorporates all of the refinements that have become associated with that language."  Id. at 46.  To the extent that the statute's language does not comport with ordinary usage, those terms have become terms of art, encompassing those nonmember rights outlined in General Motors and Beck.  See id. at 46.  Thus, unions and employers may rely on these terms of art, such as "membership," in the negotiation of union security clauses.

The Court also noted that the Board, in a development that should guide employers and unions in lawfully enforcing security clauses, is currently in the process of defining the content of what notification unions must give to employees about their rights under Beck and General Motors.  See id. at 43.  Indeed, in California Saw & Knife Works, the Board held that a union that seeks to apply a union security clause to bargaining unit employees also has an obligation under the duty of fair representation to notify nonmembers of their Beck rights when they become subject to the clause.  See 320 N.L.R.B. 224, 231 (1995), enforced sub nom. International Ass'n of Machinists & Aerospace Workers v. NLRB, 133 F.3d 1012 (7th Cir. 1998).

-6-

We turn then, to the question whether the Board's approved remedy as a whole adequately effectuates the Act, giving the Board's decision the deference it is warranted. See Pace Industries, Inc. v. NLRB, 118 F.3d 585, 593 (8th Cir. 1997). In its supplemental order, the Board evaluated the settlement based on the factors outlined in Independent Stave Co., Inc., 287 N.L.R.B. 740 (1987), and elucidated how the settlement furthers the Act's policies, discussing both the new language in the collective bargaining agreement and the notice procedures outlined in the settlement. See Group Health, Inc., 325 N.L.R.B. No. 49, 1998 WL 45147, at *1 (Feb. 02, 1998) (Board's order and decision discussing factors and approving third settlement).

We conclude that, in light of Marquez, the Board's determination that the settlement adequately effectuates the Act's purposes and policies must be upheld. The Board's order results in a settlement that requires that the offending clause be rewritten, that more notice of employee rights under section 8(a)(3) be given, and that Local 12 cease its attempts to unlawfully coerce employees into joining the union. Local 12 and Group Health have agreed to be bound by the settlement. The language of the new clause tracks the language of section 8(a)(3) and indicates that employees have options other than full membership in the union. Furthermore, and again in light of Marquez, we cannot say that the procedures approved by the Board for notifying employees of their rights under Beck are a patent attempt to achieve ends other than those envisioned by the Act. See Pace Industries, 118 F.3d at 593. The new clause and the notice methods endeavor to maintain the rights of the workers to refrain from union activities as well as to freely join the union.

We vacate our opinion in Bloom II, affirm the Board's order, and deny the petition for further review.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.